# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 4:20-cv-2400 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| POLO DEVELOPMENT, INC.; | ) | |
| AIM GEORGIA, LLC.; | ) | **COMPLAINT** |
| JOSEPH ZDRILICH; | ) | |
| DONNA ZDRILICH; | ) | |
| CARBON HILLS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## I.     NATURE OF THE ACTION

1.     This is a civil action commenced under sections 309(b), (d), and (g)(9) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319, (b), (d), and (g)(9), and the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et. seq.*, to obtain injunctive relief, civil penalties and, as appropriate, interest, attorneys' fees, costs of collection, and quarterly non-payment fees against Polo Development, Inc. ("Polo Development"), AIM Georgia, LLC ("AIM"), Joseph Zdrilich, Donna Zdrilich, and Carbon Hills, LLC, (collectively, "Defendants") for their failure to comply with administrative orders

requiring payment of an administrative penalty, and for their discharges of pollutants into wetlands and other waters of the United States without authorization in violation of sections 301(a) and 404 of the CWA, 33 U.S.C. §§ 1311(a) and 1344, on property referred to as "Lot 1" of the Polo Development Site, located near the intersection of Polo Boulevard and Burgess Run, in Poland, Mahoning County, Ohio. *See* Exhibit 1, Aerial Photograph of Lot 1, April 2006.

2.      In this action, the United States seeks: (1) to enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA sections 301(a), 33 U.S.C. §§ 1311(a); (2) to require the Defendants, at their own expense and at the direction of EPA, to restore and/or mitigate the damage to the wetlands and other waters that they have dredged and/or filled without a permit; (3) to require the Defendants to pay the penalty assessed by an administrative law judge on December 1, 2015, plus interest, attorneys' fees, costs of collection and quarterly non-payment fees; and (4) to require Defendants to pay civil penalties for their further violations of the CWA as alleged in this Complaint.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to CWA sections 309(b), (d) and (g)(9), 33 U.S.C. §§ 1319(b), (d) and (g), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      Venue is proper in the Northern District of Ohio pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1395, because the Defendants conduct business or reside in this District, the subject property

is located in this District, the violations alleged herein occurred in this District, and the cause of action alleged herein accrued in this District.

5.     Notice of the commencement of this action has been given to the State of Ohio pursuant to CWA sections 309(b), 33 U.S.C. § 1319(b).

### III.     THE PARTIES

6.     The Plaintiff in this action is the United States of America.  Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and in accordance with CWA sections 309(b), (d) and 506, 33 U.S.C. §§ 1319(b), (d) and 1366.

7.     Polo Development is an Ohio corporation registered to do business in the State of Ohio since December 6, 1999, with a business address of 8599 Youngstown-Pittsburgh Road, Youngstown, Ohio 44514.  Polo Development's business included the development of property for residential purposes in Poland, Ohio.  Polo Development owned Lot 1 of the Polo Development Site from February 9, 2000, to September 1, 2007, when it transferred property including Lot 1 to AIM.  On or about May 2, 2014, Polo Development transferred multiple lots of property to Carbon Hills for nominal consideration.  Unpermitted discharges of dredge and/or fill material into waters of the United States on Lot 1 occurred as a result of Polo Development's business and its responsibility for and control over Lot 1 and the performance of work at Lot 1.

8.     AIM is a limited liability company with a business address of 8599 Youngstown-Pittsburgh Road, Youngstown, Ohio 44514.  AIM was created in the State of Georgia and registered to do business in the State of Georgia from June 26, 2007, until December 31, 2015, when it was administratively dissolved in Georgia.  AIM has been registered to do business in the State of Ohio since March 27, 2015.  AIM's business in the State of Ohio included the development of property within the Polo Development Site, including Lot 1.  AIM owned Lot 1

from September 1, 2007, to October 1, 2014, when it transferred property including Lot 1 to Donna Zdrilich.  On or about April 25, 2014, AIM had previously transferred other property it held to Carbon Hills for nominal consideration.   Unpermitted discharges of dredge and/or fill material into waters of the United States on Lot 1 occurred as a result of AIM's business and its responsibility for and control over Lot 1 and the performance of work at Lot 1.

9.      Carbon Hills, LLC is a limited liability company created in the State of Georgia on September 17, 2011.  Carbon Hill's principal office address is currently listed as 1030 Brookstead Chase, Johns Creek, GA, 30097.   On March 27, 2015, Carbon Hills was registered to do business in the State of Ohio with its principal office identified as 2345 Stone Willow Way, Buford, Georgia 30519.  Donna Zdrilich executed the Articles of Organization for Carbon Hills and is listed as the Registered Agent of Carbon Hills.  The United States brings this action against Carbon Hills based on the fraudulent transfer of assets from AIM and Polo Development to Carbon Hills under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.*

10.     Joseph Zdrilich is a private individual residing at 8599 Youngstown-Pittsburgh Road, Youngstown, Ohio, 44514.  Joseph Zdrilich was a co-owner of Lot 1 with his wife, Donna Zdrilich, from at least July 17, 1987, until February 9, 2000, when they transferred the property to Polo Development.  Joseph Zdrilich was an officer, director, managing member or otherwise owned, directed, or controlled the activities of AIM and Polo Development when unpermitted discharges of dredged and/or fill material into the waters of the United States occurred.  Joseph Zdrilich performed and/or directed activities that resulted in unpermitted discharges of dredged and/or fill material into the waters of the United States.

11.     Donna Zdrilich is a private individual.  On information and belief, Donna Zdrilich's last known address is 8599 Youngstown-Pittsburgh Road, Youngstown, Ohio 44514.   Donna

Zdrilich is the present owner of record for Lot 1.  Donna Zdrilich was a co-owner of Lot 1 with her husband, Joseph Zdrilich, from at least July 17, 1987, until February 9, 2000, when they transferred the property to Polo Development.  Donna Zdrilich was an officer, director, managing member or otherwise owned, controlled or directed AIM and Polo Development when unpermitted discharges of dredged and/or fill material into the waters of the United States occurred.  Donna Zdrilich became the owner of Lot 1 on October 1, 2014, and had control over and responsibility for actions occurring on the property after that time, including unpermitted discharges of dredged and/or fill material into waters of the United States.

## IV.    STATUTORY AND REGULATORY AUTHORITY

12.    Section 301(a) the CWA, 33 U.S.C. §§ 1311(a), prohibits the discharge of pollutants, including dredged and fill material, into navigable waters except in compliance with, *inter alia*, a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344.

13.    CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

14.    CWA section 502(12), 33 U.S.C.  § 1362(12), defines "discharge of a pollutant" to include, *inter alia*, "any addition of any pollutant to navigable waters from any point source."

15.    CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand and cellar dirt.

16.    CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

17.    At the times of the fill activities in the unnamed tributary and the eastern and western wetlands alleged below, the regulatory definition of "waters of the United States" was set forth in

33 C.F.R. § 328.3(a) and 40 C.F.R. 230.3(s) and included, among other things, "[a]ll waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," 40 C.F.R. § 230.3(s)(1) "tributaries of waters identified in paragraphs (s)(1) through (4) of this section;" *id.* § 230.3(s)(5); and "wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (s)(1)(through (6) of this section," *id.* § 230.3(s)(7).[1]

18.     40 C.F.R. § 232.2 defines "discharge of fill material" as "the addition of fill material into waters of the United States."

19.     40 C.F.R. § 232.2 defines "fill material" as any material that "replac[es] any portion of a waters of the United States with dry land" or "chang[es] the bottom elevation of a water body for any purpose."

20.     40 C.F.R. §§ 230.3(t), 232.2 and 33 C.F.R. § 328.3 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

21.     CWA section 502(14), 33 U.S.C. § 1362(14) defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

22.     CWA section 502(5), 33 U.S.C. §1362(5), defines "person" to include, *inter alia*, "an individual, corporation, partnership [or] association."

---

[1] In 2015, EPA and the U.S. Army Corps of Engineers published a rule altering this regulatory definition.  However, the Sixth Circuit issued a nationwide stay of this rule such that it was not in effect at the time of any of the fill activities alleged in this Complaint.

23.     CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

24.     CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

25.     Each day that dredged or fill material remains in the place without a permit constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a).

26.     CWA section 309(g)(1), 33 U.S.C. § 1319(g)(1), authorizes the Administrator of EPA to assess an administrative penalty for violations of CWA section 301(a), 33 U.S.C. §§ 1311(a). Such penalties may be either a "Class I" or "Class II" penalty, 33 U.S.C. § 1319(g)(2).

27.     CWA section 309(g)(9), 33 U.S.C. § 1319(g)(9), authorizes the commencement of an action to recover the amount of an unpaid administrative penalty, plus interest, attorneys fees' and costs for collection proceedings, and a quarterly nonpayment penalty.

## V.     VIOLATIONS ALLEGED

### A.  GENERAL ALLEGATIONS

#### *Property Ownership of Lot 1*

28.     On July 17, 1987, Donna and Joseph Zdrilich purchased approximately 40 acres of property which included the Polo Development Site and Lot 1.  On February 9, 2000, Donna and Joseph Zdrilich transferred the Polo Development Site, including Lot 1, to Polo Development.

29.     On September 1, 2007, Polo Development, through its Secretary, Donna Zdrilich transferred Lot 1 to AIM.

30.     AIM owned Lot 1 from September 1, 2007, to October 1, 2014.  At that time, AIM, through its Secretary, Donna Zdrilich, transferred Lot 1 to Donna Zdrilich.  Previously, on May 1, 2014,

Joseph Zdrilich executed a Quit Claim Deed transferring his interests in Lot 1 to Donna Zdrilich.

### Description of the Site and Waters of the United States

31.     The Polo Development Site is located north of Polo Boulevard in Poland Township, Mahoning County, Ohio ("Polo Development Site" or "Site"). Lot 1 of the Polo Development Site is approximately 2.66 acres and is located in the northwestern corner of the Site. It is identified by tax parcel number 35-065-0-007.01-0 in Mahoning County.

32.     Burgess Run bisects Lot 1. Burgess Run is a perennial relatively permanent water ("RPW") which flows north through Collier Lake to Yellow Creek and then into the Mahoning River near Struthers, Ohio. The Mahoning River is a navigable-in-fact water of the United States and is listed as a "traditionally navigable water" (TNW) under section 10 of the 1899 Rivers and Harbors Act.[2]

33.     Wetlands immediately abut and are adjacent to the eastern and western shoreline of Burgess Run (respectively, the "eastern wetlands" and "western wetlands") as it flows through Lot 1. These wetlands are within the designated 100-year floodplain of Burgess Run. Portions of the eastern wetlands are also within the floodway of Burgess Run. Surface water flows from the eastern and western wetlands into Burgess Run. No berms or other features separate the eastern and western wetlands from Burgess Run.

34.     Water flows through an unnamed tributary on the northern portion of Lot 1 to Burgess Run and the eastern wetlands. The unnamed tributary is an intermittent stream directly connected with Burgess Run, and has relatively permanent flow into Burgess Run and the adjacent eastern

---

[2] *See* <http://www.lrp.usace.army.mil/Portals/72/docs/regulatory/RegulatoryBoundaries/PN12-2.pdf>.

wetlands.

35.    Burgess Run is an Ohio warm water habitat stream capable of supporting fish and is designated by the State of Ohio as an "impaired" water due to nutrient and siltation pollution.  The eastern and western wetlands, before they were disturbed, were rare palustrine riparian forested wetlands and scrub-shrub wetlands.  Prior to disturbance, the unnamed tributary had a well-established forested riparian buffer providing shade for macroinvertebrates and fish.  It provided sediment and nutrient control as habitat for aquatic organisms.  It had a wide floodplain that stored flood flow and reduced downstream flooding.  Lot 1 and the area around Lot 1, including Burgess Run, the unnamed tributary and the eastern and western wetlands, support a diversity of wildlife including fish, deer, and beaver.

36.    Prior to the unauthorized discharges, Burgess Run and the unnamed tributary had flowing water and other characteristics of RPWs, including a bed, bank, and an ordinary high water mark with characteristics of matted down soil and vegetation; sediment deposition; water staining; and debris and scouring.  Aerial photographs and field observations demonstrate that there was flowing water within Burgess Run and the unnamed tributary at various times from 2004 to 2017.

37.    Prior to the unauthorized discharge National Hydrologic Dataset elevation data and United States Geologic Survey flow data show that Burgess Run was an RPW and that the unnamed tributary was an intermittent stream with flow at least three months of the year.

38.    On April 18, 2011, and July 15, 2016, EPA conducted inspections of Lot 1 to determine if there were wetland areas on the eastern and western shore of Burgess Run on Lot 1.  The eastern and western wetlands were immediately abutting to Burgess Run and had wetland soils,

vegetation and hydrology.  *See* Exhibit 2, Inspection Maps dated April 18, 2011 and July 15, 2016.

39.     Prior to the unauthorized discharges described below, Burgess Run, the unnamed tributary and the eastern and western wetlands exhibited flow characteristics and ecological functions that, when considered alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of the unnamed tributary, Burgess Run and downstream waters, including the Mahoning River.  Specifically, the impacted wetlands, the unnamed tributary and Burgess Run, alone and in combination with similarly situated lands in the region provided important ecological functions, such as nutrient and flood water retention, purification of surface water run-off prior to discharge to Burgess Run and upstream water bodies, including the Mahoning River, and valuable plant and wildlife habitat.

### *Unauthorized Discharges of Dredge and/or Fill Material*

40.     Defendants Joseph Zdrilich, Polo Development, AIM, and Donna Zdrilich discharged or directed the discharge of dredge or fill materials, including but not limited to rock, soils, dredged materials, and sand into waters of the United States, including Burgess Run, the unnamed tributary, and the eastern and western wetlands on Lot 1 with the use of mechanized machinery, including but not limited to bulldozers and backhoes.  In aggregate, these Defendants have dredged and/or filled approximately 0.67 acres of the eastern wetlands, 0.12 acres of the western wetlands, 200 linear feet of the unnamed tributary and an unmeasured amount of the shoreline of Burgess Run on Lot 1.  Defendants did not have a permit for the discharge of dredged or fill material issued pursuant to CWA section 404(a), 33 U.S.C. § 1344(a), for any of the dredge or fill activities alleged herein.

41.     In or about November 2006, Defendants Joseph Zdrilich, Polo Development, and AIM dredged and/or filled the unnamed tributary to Burgess Run, straightening its course through Lot 1 to run along the northern edge of the property, using earthmoving equipment.

42.     In August 2008 and December 2008, Defendants Joseph Zdrilich, Polo Development, and AIM placed piles of gravel, soil, and other material in the eastern wetlands in Lot 1 and, by June 2009, further spread these materials into other areas in the eastern wetlands.  These activities were accomplished through the use of earthmoving equipment.

43.     In or about July 2009, Defendants Joseph Zdrilich, Polo Development, and AIM conducted additional earthmoving activities at the Site resulting in the placement of fill material, including in the western wetlands.

44.     In or about September 2011, Defendants Joseph Zdrilich, Polo Development, and AIM placed additional material, including dirt and asphalt, in the eastern wetlands on Lot 1.

45.     On or about April 1, 2016, Joseph Zdrilich and/or others at his direction cleared areas within the western wetlands of native vegetation and graded this area with new soils, gravel, unconsolidated soil and vegetation, using earthmoving equipment such as a bulldozer or backhoe. Donna Zdrilich owned Lot 1, including the western wetlands, at the time these activities occurred and, upon information and belief, controlled access to the property.

46.     During the same period that they engaged in these fill activities, Defendants were repeatedly warned that their activities were in violation of the CWA or otherwise unlawful and/or they were asked to restore the Site to its previous condition, including on the following occasions:

            a.  On November 2, 2006, representatives of the Mahoning Soil and Water

Conservation District and Ohio EPA inspected the Site.  Mr. Zdrilich was orally advised to cease further excavation until the U.S. Army Corps of Engineers ("Corps") and Ohio EPA were able to evaluate his activities.

b.  On November 3, 2006, the Mahoning County Planning Commission sent Mr. Zdrilich a letter informing him of the need to obtain the relevant permits to undertake development on Lot 1, including under section 404 of the CWA. In a follow-up letter on November 28, 2006, the Mahoning County Planning Commission directed Mr. Zdrilich to immediately stop development on Lot 1.

c.  On January 11, 2007, the Corps sent a letter to Mr. Zdrilich informing him that wetlands falling under the regulatory jurisdiction of the CWA existed on the property and were impacted by his activities in violation of the CWA.  The Corps requested that Mr. Zdrilich restore the wetland area to its previous condition and informed him that he was not authorized to place fill in Lot 1 until he could produce written evidence that the area proposed for fill was not within the floodplain.

d.  On August 28, 2008, the Mahoning Soil and Water Conservation District again sent Mr. Zdrilich a letter informing him, again, that jurisdictional wetlands existed at the Site and that clearing, placement of fill, or excavation of these areas would violate the CWA.

e.  On December 23, 2008, the Mahoning County Planning Commission directed Mr. Zdrilich to remove unlawfully placed fill at the Site.

f.   On April 14, 2011, EPA informed Mr. Zdrilich that EPA believed that the site had been unlawfully filled under section 301 of the CWA.

g.   On May 9, 2016, the Corps sent Joseph Zdrilich a letter informing him that he did not have a permit for the April 1, 2016, dredge and fill activities. Furthermore, the Corps directed him to cease and desist from similar actions on the western wetlands and to contact the Corps.  Joseph Zdrilich received this letter on or about May 13, 2016.

### *Restoration Order*

47.    On October 26, 2011, EPA issued an administrative order requiring Mr. Zdrilich, Polo Development, and AIM (collectively, "Respondents") to develop and implement a plan to restore the eastern and western wetlands located on Lot 1 (the "Restoration Order").  *See* Exhibit 7.  A copy of the Restoration Order was also sent to the State of Ohio on October 18, 2011, in accordance with 33 U.S.C. § 1319(a)(4).

48.    The Restoration Order found that, based on their discharge of fill material from 2006 through 2011, the Respondents had violated the CWA by engaging in the discharge of pollutants from point sources into navigable waters in violation of section 301 of the CWA, 33 U.S.C. § 1311.  The Restoration Order directed the Respondents to "refrain from further discharges of dredge or fill materials into the wetlands or waterways on the Site except in compliance with a permit issued pursuant to section 404 of the CWA, 33 U.S.C. § 1344, and the CWA, 33 U.S.C. §§ 1251-1387."

49.    The Restoration Order further directed the Respondents to submit to EPA for approval a plan to restore areas of the eastern and western wetlands affected by their fill activities.

Among other things, the plan was required to include a schedule of restoration activities and date by which they would be completed, and provide for monitoring to assess the restoration efforts and reporting to EPA. The Restoration Order also provided an opportunity to request a conference with EPA to discuss the Restoration Order prior to the order becoming effective.

50.     After discussing the Restoration Order with EPA, on November 7, 2011, the Respondents informed EPA in writing that they would comply with the Restoration Order.

51.     On February 28, 2012, the Respondents, through their consultant Wallace & Pancher, Inc., submitted a restoration plan for Lot 1 to EPA ( "WPI Plan"), which required the Respondents to re-establish a forested wetland. Among other things, the WPI Plan provided that the Respondents were to restore the wetland topographic features, remove invasive species of vegetation, and plant identified wetland compatible vegetation by June 30, 2012. Additionally, the WPI Plan provided that the Respondents would place a deed restriction on the eastern and western wetlands by July 31, 2012, restricting the use of the wetland portion of the property in perpetuity.

52.     On March 9, 2012, EPA approved the WPI Plan.

53.     On or about March 23, 2012, Mr. Zdrilich informed EPA that the Respondents would not proceed with the WPI Plan. Mr. Zdrilich again informed EPA, on or about May 22, 2012, that the Respondents would not proceed with the WPI Plan.

54.     The Respondents did not implement the WPI Plan.

55.     In 2013, as part of settlement negotiations, a second restoration plan was developed by Ecotune Environmental Consults, Inc. (the "Ecotune Plan"), requiring restoration of 0.82 acres of the eastern wetlands by July 8, 2013, and requiring a certification that the work was complete by August 8, 2013.

14

56.     On July 22, 2013, the Respondents signed a Consent Agreement and Final Order providing

for completion of the Ecotune Plan by July 8, 2013.  However, site visits by Corps' inspectors in

August and September 2013 revealed that the Respondents had not implemented the Ecotune Plan.

Despite requests from EPA that the Respondents demonstrate that they had completed the Ecotune

Plan and submit certification that the work was complete, the Respondents did not do so.  As a

result, the Consent Agreement and Final Order was not finalized.

### *Administrative Penalty Proceedings*

57.     EPA filed a Class II administrative penalty complaint ("Administrative Penalty

Complaint") against the Respondents on January 8, 2013.  The administrative penalty complaint

alleged that the Respondents violated section 301 of the CWA, 33 U.S.C. §§ 1311, based on their

discharge of dredge and/or fill material without a permit on Lot 1, including into the eastern and

western wetlands, the unnamed tributary, and Burgess Run from on or about November 2, 2006,

until 2012.  *See* Exhibit 3 (Administrative Penalty Complaint).

58.     The Respondents filed an answer to the Administrative Penalty Complaint on March 6,

2013, denying liability, asserting affirmative defenses, and requesting a hearing.

59.     On October 17, 2014, EPA filed a Motion for Accelerated Decision.  EPA requested that

the Presiding Officer of the administrative penalty proceedings find that the Respondents were

jointly and severally liable for violating the CWA section 301(a), 33 U.S.C. § 1311(a), based on

the discharge of dredge/fill material into Burgess Run, the unnamed tributary, and the eastern

wetlands without a permit.

60.     On February 6, 2015, the Presiding Officer granted EPA's Motion for Accelerated

Decision with respect to the Respondents' liability under the CWA section 301(a) for

discharges into Burgess Run, the unnamed tributary, and the eastern wetlands.  The

15

Presiding Officer also rejected the Respondents' affirmative defenses.  *See* Exhibit 4 (Order on Complainant's Motion to Supplement Prehearing Exchange, Motion for Accelerated Decision, and Motion to Strike Respondents' Defenses).

61.     Pursuant to CWA section 309(g)(2)(B), 33 U.S.C. § 1319(g)(2)(B), the Presiding Officer held an evidentiary hearing from February 24, 2015, to February 27, 2015, on the penalty EPA proposed in the Administrative Penalty Compliant.  At this hearing, EPA limited its request for a penalty to the CWA violations arising from the discharge of dredge and/or fill material without a permit into the eastern wetlands, Burgess Run, and the unnamed tributary.

62.     The Respondents testified, presented evidence, and cross-examined witnesses at this hearing.

63.     On December 1, 2015, the Presiding Officer issued an initial decision assessing a civil penalty of $32,550 ("Initial Decision").  Exhibit 5 (Initial Decision Order).

64.     The Initial Decision was mailed to counsel for the Respondents on December 1, 2015, via first class mail and electronic mail.  Service of the Initial Decision was complete upon mailing. *See* 40 C.F.R. § 22.7(c).

65.     The Respondents did not timely file a notice of appeal or an appellate brief by January 5, 2016, the deadline to file an appeal of the Accelerated Decision Order and the Initial Decision. 40 C.F.R. § 22.30(a).

66.     On January 13, 2016, the Respondents filed a Motion to File Notice of Appeal Nunc Pro Tunc and a Notice of Appeal.

67.     On January 15, 2016, the Board set a briefing schedule for the Respondents' Motion to File Notice of Appeal Nunc Pro Tunc and, pursuant to 40 C.F.R. §§ 22.27(c) and 22.30(b),

extended the time for it to decide whether to exercise *sua sponte* review of the Initial Decision until 30 days after it decided that motion.

68.     On March 17, 2016, the Board denied the Respondents' Motion to File Notice of Appeal Nunc Pro Tunc and dismissed the Notice of Appeal.  *See* Exhibit 6 (Order Dismissing Notice of Appeal as Untimely).

69.     The Board did not exercise *sue sponte* review by April 17, 2016.   Pursuant to 40 C.F.R. §§ 22.27(c) and 22.31(a) and (b), the Initial Decision assessing the civil penalty became a final order of EPA and was effective no later than April 17, 2016.    Pursuant to 40 C.F.R. § 22.31(c), the Respondents were required to pay the $32,550 administrative penalty to the Treasurer of the United States no later than May 17, 2016.

70.     On May 17, 2016, the Respondents submitted to the Board Respondents' Motion for Extension of Time to File Notice of Appeal of Initial Decision Dated December 1, 2015 and Appeal Brief.   The Respondents did not include an appellate brief or indicate the issues on appeal.  On July 26, 2016, the Board denied and dismissed this motion.

71.     By failing to timely appeal EPA's Initial Decision or Accelerated Decision Order to the Board, the Respondents waived their right to judicial review of EPA's final order assessing the civil penalty. *See* 40 C.F.R. §§ 22.27(d), 22.30(a)(1)(i).  The Respondents have never sought judicial review of EPA's final order assessing the civil penalty.

### B.  <u>FIRST CAUSE OF ACTION</u>

***Failure to Pay the Administrative Penalty by Polo Development, AIM, and Joseph Zdrilich, 33 U.S.C. § 1319(g)(9)***

72.     The United States repeats, incorporates by reference, and realleges the allegations set forth in paragraphs 1-71 of this Complaint.

73.     An administrative penalty in the amount of $32,250 has been assessed against the Respondents under the CWA section 309(g), 33 U.S.C. § 1319(g).

74.     The Respondents have not remitted $32,550 or any portion thereof to the United States.

75.     CWA section 309(g)(9), 33 U.S.C. § 1319(g)(9), authorizes the United States to bring a civil action for the unpaid administrative penalty in the amount of $32,550, plus interest, attorneys' fees, costs of collection, and quarterly non-payment penalties.  The Respondents are liable for these amounts.

76.     Pursuant to CWA section 309(g)(9), 33 U.S.C. § 1319(g)(9), in an action to collect such an unpaid administrative penalty, "the validity, amount, and appropriateness of such penalty shall not be subject to review."

### C.  <u>SECOND CAUSE OF ACTION</u>

*Donna Zdrilich and Carbon Hills are Liable for the Failure of AIM and Polo Development to Pay the Assessed Administrative Penalty Pursuant to the FDCPA*

77.     The United States repeats, incorporates by reference, and realleges the allegations set forth in paragraphs 1-76 of this Complaint.

78.     Pursuant to section 3002(3)(B) of the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3002(3)(B), the administrative penalty of $32,550 is a "debt" since it is penalty amount due to the United States.

79.     Pursuant to FDCPA section 3002(4), 28 U.S.C. § 3002(4), the Respondents are "debtors" since they are persons liable for the payment of the $32,550 civil penalty.

80.     Pursuant to FDCPA sections 3301(3) and (4), 28 U.S.C. § 3301(3) and (4), the United States is a "creditor" which has a "claim" against the Respondents for their failure to pay the administrative penalty of $32,550.

81.     On or about April 24, 2014, and May 2, 2014, Joseph Zdrilich on his own behalf and as a representative of Polo Development and AIM transferred real property that Polo Development and AIM owned in Ohio to either Carbon Hills or Donna Zdrilich.  On or about this time, Joseph Zdrilich also transferred his interests in Lot 1 to Donna Zdrilich.

82.     Upon information and belief, as a result of the transfers of property alleged herein, AIM and Polo Development had either no property assets or their assets were significantly reduced in value.  Donna Zdrilich and Carbon Hills acquired all or the substantial majority of the property assets of AIM and Polo Development with marketable value.

83.     Pursuant to FDCPA section 3301(2), 28 U.S.C. § 3301(2), the real property transferred to Carbon Hills and Donna Zdrilich were "assets" of Joseph Zdrilich, Polo Development, and/or AIM.

84.     Pursuant to FDCPA section 3301(6), 28 U.S.C. § 3301(b), Defendants Polo Development, AIM and/or Joseph Zdrilich's actions to transfer the property assets of Polo Development and AIM to Donna Zdrilich and/or Carbon Hills, LLC are "transfers."

85.     Pursuant to FDCPA section 3304(b), 28 U.S.C. § 3304(b), Polo Development, AIM and/or Joseph Zdrilich's transfer of the assets as described herein to Donna Zdrilich and/or Carbon Hills, LLC. were "fraudulent transfers" because these transfers were intended either to hinder, delay or defraud the United States or another creditor, including the Respondents' former counsel, Wilkinson & Associates, LLC, pursuant to FDCPA section 3304(b)(1)(A), 28 U.S.C. § 3304(b)(1)(A).  In addition, these transfers were fraudulent because they were made without receiving equivalent value for the transfers while Polo Development, AIM, and Joseph Zdrilich incurred, intended to incur, or reasonably believed that they would incur debts beyond their ability to pay, pursuant to FDCPA section 3304(b)(1)(B), 28 U.S.C. § 3304(b)(1)(B).

86.     Donna Zdrilich and Carbon Hills, LLC are the first transferees of the assets identified in herein.

87.     Pursuant to FDCPA sections 3306(a) and 3307(b)(1), 28 U.S.C. § 3306(a) and 3307(b)(1), Donna Zdrilich and Carbon Hills, LLC are liable for the amount of the debt due to the United States as a result of the fraudulent transfers alleged in this Second Cause of Action.

### D.  COUNT THREE

*Defendants Polo Development, AIM, Joseph and Donna Zdrilich Discharged Dredge and Fill Material in Lot 1*

88.     The United States repeats, incorporates by reference, and realleges the allegations set forth in paragraphs 1-87 of this Complaint.

89.     At various times between approximately November 2006 and April 2016, Joseph Zdrilich, AIM, and/or Polo Development, or others at their direction or under their supervision, cleared areas within Lot 1 of native vegetation and discharged dredged or fill material, including gravel, new and unconsolidated soil and vegetation with earthmoving equipment, such as a bulldozer or backhoe.  Polo Development, AIM, and Donna Zdrilich owned Lot 1 at various times when these fill activities occurred.

90.     Dredged spoil, soils, gravel, and vegetation are pollutants as defined by CWA section 502(6), 33 U.S.C. § 1362(6).

91.     Earth moving equipment such as bulldozers and backhoes are point sources as defined by CWA section 502(14), 33 U.S.C. § 1362(14).

92.     The addition of dredged spoil, soil, gravel, and vegetation to the wetlands and unnamed tributary in Lot 1 using earthmoving equipment constitutes a discharge of a pollutant as defined by CWA section 502(12), 33 U.S.C. § 1362(12).

93.     As alleged in this Complaint Burgess Run and the unnamed tributary were and are waters of the United States because they are RPWs which flow to the Mahoning River, a navigable-in-fact water of the United States.  Burgess Run and the unnamed tributary have a significant chemical, physical, and biological connection to other waters of the United States, including but not limited to the Mahoning River, a TNW of the United States.

94.     As alleged in this Complaint, the eastern and western wetlands were and are wetlands as defined by 40 C.F.R. §§ 230.3, 232.2 and 33 C.F.R. § 328.3 because they were inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions.

95.     The eastern and western wetlands immediately abut Burgess Run and have a significant chemical, physical, and biological connection to other waters of the United States, including but not limited to the Mahoning River, a TNW of the United States.  The eastern and western wetlands are waters of the United States.

96.     As of the date of filing of this Complaint the unnamed tributary and eastern and western wetlands have not been restored to their pre-disturbance condition.

97.     Joseph Zdrilich, Donna Zdrilich, Polo Development, and AIM are "persons" as defined by section 502(5) of the CWA, 33 U.S.C. § 1362(5), who, at the time of the violations alleged herein, owned or controlled Lot 1 and/or directed or supervised the discharge of dredge or fill material from earthmoving equipment into waters of the United States on Lot 1, without a permit as required by section 404 of the CWA, 33 U.S.C. § 1344.

98.     Joseph Zdrilich, Donna Zdrilich, Polo Development, and AIM have violated and continued to violate CWA section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges

of dredged and/or fill material into the unnamed tributary and eastern and western wetlands and their failure to restore these areas to their pre-disturbance condition.

99.     Each day that such material remains in place is a separate day of violation of section 301(a), 33 U.S.C. § 1311(a).

100.    Unless enjoined Joseph Zdrilich, Donna Zdrilich, Polo Development and AIM are likely to continue to discharge dredged and/or fill material into and/or to allow dredged and/or fill material to remain in the waters of the United States and to fail to restore the western wetlands in compliance with the Restoration Order, as alleged herein, in violation of CWA section 301, 33 U.S.C. § 1311(a).

## VI.     <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

1.  The Court enter a judgment in favor of the United States and against the Defendants AIM, Polo Development, and Joseph Zdrilich, jointly and severally, in the amount of $32,550, plus interest, attorneys' fees, costs of collection, and quarterly non-payment penalties, for their failure to pay the administrative penalty assessed by EPA;

2.  The Court enter a judgment against Carbon Hills and Donna Zdrilich for the failure to pay the administrative penalty, plus interest, attorneys' fees, costs of collection, and quarterly non-payment penalties, based on the fraudulent transfer of assets from AIM and Polo Development to these entities;

3.  The Court permanently enjoin Defendants AIM, Polo Development, Joseph Zdrilich, and Donna Zdrilich from discharging or causing the discharge of dredge and/or fill

22

material or other pollutants into any waters of the United States except in compliance with the CWA;

4. The Court enjoin Defendants AIM, Polo Development, Joseph Zdrilich, and Donna Zdrilich to undertake measures, at their own expense and at the direction of EPA, to effect complete restoration of Burgess Run, the unnamed tributary, and the eastern and western wetlands on Lot 1 and/or to conduct compensatory mitigation for environmental damage, as appropriate;

5. The Court assess against Defendants Joseph Zdrilich and Donna Zdrilich pursuant to CWA section 309(d), 33 U.S.C. 1319(d), a civil penalty for each day of violation of CWA sections 301(a), 33 U.S.C. §§ 1311(a), based on the fill of the western wetlands in 2016;

6. The Court award the United States costs and disbursements in this action; and

7. The Court grant the United States such other relief as the Court may deem just and proper.

Dated: October 22, 2020                     Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division

 _/s/ Benjamin Carlisle_____
BENJAMIN CARLISLE
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
601 D. Street, NW, Room 8406
Washington, D.C. 20004
(202) 514-9771 (telephone)
Benjamin.carlisle@usdoj.gov

OF COUNSEL:

RICHARD J. CLARIZIO
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5,
77 W. Jackson, Blvd.
Chicago, Illinois, 60604

ROBERT M. PEACHEY
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5,
77 W. Jackson, Blvd.
Chicago, Illinois, 60604

JEFFREY SPEIR
Attorney-Advisor
U.S. Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania, Ave. NW (2243-A)
Washington, D.C. 20460
202-564-0872

## LIST OF EXHIBITS TO THE COMPLAINT

Exhibit 1, April 2006, Aerial Photograph of Lot 1.

Exhibit 2, Inspection Maps dated April 18, 2011, and July 15, 2016.

Exhibit 3, January 8, 2013, EPA *Administrative Penalty Complaint,* EPA Docket No.: CWA-05-20134-0003.

Exhibit 4, February 6, 2015, EPA Presiding Officer's *Order on Complainant's Motion to Supplement Prehearing Exchange, Motion for Accelerated [on] Liability and Ability to Pay, Decision and Motion to Strike Respondents' Affirmative Defenses and Inability to Pay* (*Accelerated Decision Order)*

Exhibit 5, December 1, 2015, EPA Presiding Officer's *Initial Decision Order.*

Exhibit 6, EPA, Board, March 17, 2016, *Order Dismissing Notice of Appeal as Untimely.*

Exhibit 7, October 26, 2011, *In the Matter of: Polo Development, Inc., AIM Georgia, LLC and Joseph Zdrilich,* EPA Docket No.: V-404-AO-12-01, *Restoration Order.*